MICHAEL FAILLACE & ASSOCIATES, P.C.
Sara J. Isaacson, Esq.
Michael A. Faillace, Esq.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
-------------------------------------------------------X

PHILLIP SHAVERS, *individually and on behalf of others similarly situated,*

**COMPLAINT**

                          *Plaintiff,*

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

        -against-

LIMO EXPRESS INC. (d/b/a LIMO EXPRESS), THOMAS JOHNSON, and ALICE BELTHOFF,

                        *Defendants.*
-------------------------------------------------------X

    Phillip Shavers, individually and on behalf of others similarly situated (hereinafter, "Plaintiff Shavers"), by and through his attorneys, Michael Faillace & Associates, P.C., upon his knowledge and belief, and as against Limo Express Inc. (d/b/a Limo Express) ("Defendant Corporation"), Thomas Johnson and Alice Belthoff (collectively the "Defendants"), alleges as follows:

## NATURE OF THE ACTION

    1.    Plaintiff Shavers is a former employee of Defendants Limo Express Inc., Thomas Johnson and Alice Belthoff.

    2.    Defendants own, operate, and/or control a chauffeured transportation company located at 725 Main Street, Hackensack, NJ 07601 under the name "Limo Express."

3.      Upon information and belief, Individual Defendants Thomas Johnson and Alice Belthoff serve or served as owners, managers, principals and/or agents of Limo Express Inc., and upon information and belief, through the corporate entity operate or operated the chauffeured transportation company as a joint or unified enterprise.

4.      Plaintiff Shavers was primarily employed as a driver.

5.      Plaintiff Shavers worked for Defendants in excess of 40 hours per week, without appropriate minimum wage or overtime compensation for the hours that he worked each week.

6.      Rather, Defendants failed to maintain accurate recordkeeping of his hours worked, and failed to pay Plaintiff Shavers appropriately for any hours worked, either at the straight rate of pay, or for any additional overtime premium.

7.      At all times relevant to this complaint, Defendants maintained a policy and practice of requiring Plaintiff Shavers to work in excess of forty (40) hours per week without paying him the minimum wage and overtime compensation required by federal and state laws.

8.      Plaintiff Shavers now brings this action on behalf of himself, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA").

9.      Plaintiff Shavers seeks certification of this action as a collective action on behalf of himself, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b)

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction under 28 U.S.C. § 216(b) (FLSA) and 28 U.S.C. § 1331 (federal question).

11.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in the State of New Jersey within this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a chauffeured transportation company located in this district. Further, Plaintiff Shavers was employed by Defendants in this district.

## THE PARTIES

### *Plaintiff*

12.     Plaintiff Phillip Shavers ("Mr. Shavers" or "Plaintiff Shavers") is an adult individual residing in Passaic County, New Jersey.

13.     Mr. Shavers was employed by Defendants from approximately September 2016 until on or about March 2017.

14.     Plaintiff Shavers consents to being a party plaintiff pursuant to 29 U.S.C. § 216(b), and brings these claims based upon the allegations herein as a representative party of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

### *Defendants*

15.     Defendants own, operate, and/or control a chauffeured transportation company located at 725 Main Street, Hackensack, NJ 07601 under the name "Limo Express" at all times relevant to this complaint.

16.     Defendant Limo Express Inc. is a corporation organized and existing under the laws of the State of New Jersey.  Upon information and belief, it maintains its principal place of business at 725 Main Street, Hackensack, NJ 07601.

17.     Defendant Thomas Johnson is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Thomas Johnson is

- 3 -

sued individually in his capacity as an owner, officer and/or agent of the Defendant Corporation. Defendant Thomas Johnson possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controls or controlled significant functions of Defendant Corporation. Defendant Thomas Johnson determined the wages and compensation of the employees of Defendants, including Plaintiff Shavers, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

18.     Defendant Alice Belthoff is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Alice Belthoff is sued individually in her capacity as an owner, officer and/or agent of the Defendant Corporation. Defendant Alice Belthoff possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controls or controlled significant functions of Defendant Corporation. Defendant Alice Belthoff determined the wages and compensation of the employees of Defendants, including Plaintiff Shavers, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## **FACTUAL ALLEGATIONS**

### *Defendants Constitute Joint Employers*

19.     Defendants operate a chauffeured transportation company located at 725 Main Street, Hackensack, NJ 07601 under the name "Limo Express."

20.     Defendants maintain as their principal place of business a centralized office at 725 Main Street, Hackensack, NJ 07601.

- 4 -

21.     Individual Defendants Thomas Johnson and Alice Belthoff possess operational control over Defendant Corporation, possess an ownership interest in Defendant Corporation, and control significant functions of Defendant Corporation.

22.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

23.     Defendants possessed substantial control over Plaintiff Shavers' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiff Shavers, and all similarly situated individuals referred to herein.

24.     Therefore, for the above and other reasons, Defendants jointly employed Plaintiff Shavers, and all similarly situated individuals, and are Plaintiff Shavers' (and other similarly situated employees') employers within the meaning of 29 U.S.C. § 201, *et seq*.

25.     In the alternative, Defendants constitute a single employer of Plaintiff Shavers and all similarly situated individuals.

26.     Upon information and belief, Defendants Thomas Johnson and Alice Belthoff operate Limo Express Inc. as either an alter ego of themselves, and/or fail to operate Limo Express Inc. as an entity legally separate and apart from their own selves, by, amongst other things:

     a.  failing to adhere to the corporate formalities necessary to operate Limo Express Inc. as a corporation;

     b.  defectively forming or maintaining Limo Express Inc. by, among other things, failing to hold annual meetings or maintaining appropriate corporate records;

- 5 -

    c.   transferring assets and debts freely as between all Defendants;

    d.   operating Limo Express Inc. for their own benefit as the sole or majority shareholders;

    e.   operating Limo Express Inc. for their own benefit and maintaining control over it as a closed corporation;

    f.   intermingling assets and debts of their own with those of Limo Express Inc.;

    g.   diminishing and/or transferring assets to avoid full liability as necessary to protect their own interests; and

    h.   other actions evincing a failure to adhere to the corporate form, thereby allowing for breach of the corporate veil.

27.    At all relevant times, Defendants were Plaintiff Shavers' employers within the meaning of the FLSA. Defendants had the power to hire and fire Plaintiff Shavers, controlled the terms and conditions of his employment, and determined the rate and method of any compensation in exchange for Plaintiff Shavers' services.

28.    There are numerous examples of the fact that Plaintiff Shavers was an employee (and not an independent contractor) of Defendants; these examples include but are not limited to the following:

    a.   Plaintiff Shavers was not free to decline work;

    b.   Plaintiff Shavers was not free to perform chauffeur/driving services for other chauffeured transportation services companies;

    c.   Plaintiff Shavers was not permitted to perform services any days and/or hours that he chose. Rather, Plaintiff Shavers was required to perform driving services whenever Defendants asked him to;

d.  Defendants provided Plaintiff Shavers with the tools and equipment he needed to perform his job, including, without limited to, the vehicles he drove, all of which were owned or leased by Defendants;

e.  Defendants provided Plaintiff Shavers with a Manual & Policy and Procedures, whereby Defendants required Plaintiff Shavers to:

   i.  wear a uniform, "consisting of a black solid suit with a white button down dress shirt, a black, navy or maroon tie and black dress shoes";

   ii.  refrain from wearing a down jacket or ski jacket during work, but could wear a solid black or navy V-neck sweater over his white button down dress shirt if it was "extremely cold";

   iii.  carry an umbrella with him at all times;

   iv.  vacuum and "wipe[] clean" the interior of the vehicle he drove after every trip, and specifically "restock the vehicle with clean glasses and napkins," and check the coolers to make sure there were no half empty and/or empty bottles;

   v.  wash the exterior of the vehicle(s) each day by bringing the car to a car wash of Defendants' choosing located in Hackensack, New Jersey;

   vi.  restock the vehicle(s) with passenger supplies each trip;

   vii.  "gas up" vehicle(s) after each trip regardless of how much gas was in the tank;

   viii.  perform a vehicle inspection "prior to departure" consisting of "[a] walk around of vehicle to spot any problems, such as low tires, dents or dings, that have not been previously reported, blow headlights etc.";

ix.   be at pick-up locations 15 minutes prior to a customer's reservation time;

x.   "get out of vehicle and open door for client every time," "assist client with luggage, personal items, etc." and "hand out business card to every client";

xi.   adhere to specific airport standards when picking up and dropping off customers at the airport, including but not limited to having a Limo Express sign "with clients name written in large print with magic marker if a sign is not provided" by Limo Express for customer pick-ups from the airport;

xii.   adhere to certain "As Directed" standards including but not limited to asking clients if they had an enjoyable night when dropping off clients at night;

xiii.   adhere to certain "Wedding Standards" including but not limited to congratulating the clients and thanking them for using Limo Express;

xiv.   keep his facial hair at a certain length;

xv.   refrain from wearing cologne while working;

29.   In each year from 2016 to 2017, Defendants had gross annual sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

30.   In addition, upon information and belief, Defendants and/or their enterprise are directly engaged in interstate commerce. For example, the vehicles that Defendants owned and/or leased were produced outside of the State of New Jersey.

*Individual Plaintiff*

31.   Plaintiff Shavers is a former employee of Defendants, who was primarily employed as a driver.

32.     Plaintiff Shavers seeks to represent a class of similarly situated individuals under 29 U.S.C. § 216(b).

*Plaintiff Phillip Shavers*

33.     Plaintiff Shavers was employed by Defendants from approximately September 2016 until on or about March 2017.

34.     At all relevant times, Plaintiff Shavers was employed by Defendants to work as a driver.

35.     In the performance of his work duties, Plaintiff Shavers regularly handled goods produced in interstate commerce, including but not limited to the vehicles that he drove.

36.     Plaintiff Shavers' work duties required neither discretion nor independent judgment.

37.     Throughout his employment with Defendants, Plaintiff Shavers regularly worked in excess of 40 hours per week.

38.     From approximately September 2016 until on or about March 2017, Plaintiff Shavers typically worked 60 to 90 hours per week.

39.     However, Plaintiff Shavers was required to be available twenty-four hours a day, six to seven days a week in the event Defendants needed him to drive a customer somewhere.

40.     Throughout his employment with Defendants, Plaintiff Shavers was paid his wages by check.

41.     From approximately September 2016 until on or about March 2017, Defendants paid Plaintiff Shavers a flat rate for each trip that he made depending on the destination of the trip.  For example, Defendants paid Plaintiff Shavers a flat rate of: $25 when he drove customers to Newark International Airport, $28 when he drove customers to LaGuardia Airport, $32 when he drove customers to John F. Kennedy International Airport, and $28 when he drove customers to New York City.

42.     In addition, Defendants withheld all of the tips Plaintiff Shavers received from customers; specifically, Defendants charged the customers a 20% gratuity fee in advance of the trip, but Defendants never gave Plaintiff Shavers any portion of those tips.

43.     Defendants gave Plaintiff Shavers pay stubs that falsely stated that his weekly wages included a portion of the 20% gratuity fee that Defendants charged their customers, when in actuality Plaintiff Shavers did not receive any tips.

44.     Plaintiff Shavers was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device, such as sign in sheets or punch cards, that accurately reflected his actual hours worked.

45.     Further, Defendants did not provide Plaintiff Shavers with any document or other statement accurately accounting for all of his actual hours worked or setting forth the rate of pay for all of his hours worked.

46.     No notification, either in the form of posted notices or other means, was given to Plaintiff Shavers regarding overtime and wages under the FLSA.

47.     Defendants required Plaintiff Shavers to purchase "tools of the trade" with his own funds---including six white shirts, three ties, three black suits, two pairs of shoes and a black coat.

*Defendants' General Employment Practices*

48.     Defendants regularly required Plaintiff Shavers to work in excess of forty (40) hours per week without paying him the proper regular rate of pay and/or overtime wages.

49.     Defendants' pay practices resulted in Plaintiff Shavers (and all similarly situated employees), not receiving payment for all of his hours worked, so his effective rate of pay was reduced below the minimum wage.

50.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act by neglecting to maintain accurate and complete timesheets and payroll records.

51.     Upon information and belief, this was done to disguise the actual number of hours Plaintiff Shavers worked, and to avoid paying Plaintiff Shavers properly for: (1) his full hours worked, and (2) for overtime due.

52.     Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirement of the FLSA.

## FLSA COLLECTIVE ACTION CLAIMS

53.     Plaintiff Shavers brings his FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period"), as employees of Defendants (the "FLSA Class").

54.     At all relevant times, Plaintiff Shavers, and other members of the FLSA Class who are and/or have been similarly situated, have had substantially similar job requirements and

pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them the required minimum wage and overtime wages, and willfully failing to keep records required by the FLSA.

55.    The claims of Plaintiff Shavers stated herein are similar to those of the other similarly situated employees.

## FIRST CAUSE OF ACTION
### (Violation of the Minimum Wage Provisions of the FLSA)

56.    Plaintiff Shavers repeats and realleges all paragraphs above as though fully set forth herein.

57.    At all times relevant to this action, Defendants were Plaintiff Shavers' employers (and employers of the putative FLSA Class members) within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).

58.    Defendants had the power to hire and fire Plaintiff Shavers (and the putative FLSA Class members), control the terms and conditions of his employment, and determine the rate and method of any compensation.

59.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

60.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

61.    Defendants intentionally, or otherwise, failed to pay Plaintiff Shavers (and the putative FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

62.    Defendants' failure to pay Plaintiff Shavers (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

63.     Plaintiff Shavers was damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Violation of the Overtime Provisions of the FLSA)

64.     Plaintiff Shavers repeats and realleges all paragraphs above as though fully set forth herein.

65.     Defendants intentionally, or otherwise in violation of the FLSA, failed to pay Plaintiff Shavers (and the putative FLSA Class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207 (a)(1).

66.     Defendants' failure to pay Plaintiff Shavers (and the putative FLSA Class members) overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

67.     Plaintiff Shavers was damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Shavers respectfully requests that this Court enter judgment against Defendants:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff Shavers (including prospective collective class members);

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff Shavers (including the

prospective collective class members);

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiff Shavers' (and the prospective class members') compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violation of the provisions of the FLSA was willful as to Plaintiff Shavers (including prospective collective class members);

(f)     Awarding Plaintiff Shavers (including prospective collective class members) damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiff Shavers (including the prospective collective class members) liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Awarding Plaintiff Shavers (including the prospective collective class members) pre-judgment and post-judgment interest as applicable;

(i)     Awarding Plaintiff Shavers (including the prospective collective class members) the expenses incurred in this action, including costs and attorney's fees; and

(j)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
          September 1, 2017

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:      /s/ Sara J. Isaacson
Sara J. Isaacson, Esq. [SI 8937]
Michael Faillace, Esq.
MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 1, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                      Philip Shavers

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                       01 de septiembre de 2017

*Certified as a minority-owned business in the State of New York*